IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES, DIVISION, IBT<br><br>*Plaintiff*,<br><br>v.<br><br>UNION PACIFIC RAILROAD, COMPANY<br><br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No.<br>)<br>)<br>)<br>)<br>) |

## PETITION FOR ENFORCEMENT OF ARBITRATION AWARD

The Brotherhood of Maintenance of Way Employes Division/IBT ("BMWED" or "Union") petitions this Court for an Order enforcing arbitration awards ("Awards") issued by a Railway Labor Act ("RLA") arbitration board in disputes between BMWED and the Union Pacific Railroad Company ("UP" or "Carrier"). The arbitration board sustained the claims by its Awards dated February 15, 2024. Copies of the Awards are attached to this petition. The Awards provided for monetary remedies to the grievants, and directed that the Union and the Carrier engage in a joint check of records to determine the amount of the remedies.

UP refused to engage in a joint check of records with payments based on the joint check ordered by the arbitration board and instead engaged in a unilateral review of the records on which it based its unilateral determination of the monetary remedies due the grievants. Furthermore, the claims were "continuing claims" such that the remedies sought were for so long as UP continued to violate the agreement, but UP's unilateral payments purported to be complete remedies, even though UP continues to engage in actions the arbitration board found to have

1

violated the agreement.

This matter has previously been before this Court when BMWED initially sought enforcement of the Awards in *Brotherhood of Maintenance of Way Employes Division/IBT v. Union Pacific Railroad Co.*, (D.NE Case No. 8:24CV478). The Court dismissed BMWED's earlier petition after finding the parties' dispute involved interpretation of the Awards. The disputes about the Awards have been submitted for interpretation to the arbitration board, but an interpretation has not been issued. In the meantime, the statutory period for enforcement of RLA arbitration awards is two years from issuance of an award, and the Awards at issue between BMWED and UP were issued on February 15, 2024. BMWED proposed a tolling agreement to UP, but the Carrier refused such an agreement.

Given the imminent approach of the limitations period, UP's inconsistent positions in asserting a need for interpretation of the Awards but refusing to enter a tolling agreement pending a decision on the interpretation issues, BMWED returns to this Court again seeking enforcement of the Awards under Section 3 First (p) of the RLA, 45 U.S.C. §153 First (p). Additionally, because UP has refused to enter a tolling agreement while PLB No. 7661 is considering the interpretation issues raised by UP, BMWED seeks a declaration that UP has failed to exert every reasonable effort to resolve its disputes with BMWED in violation of Section 2 First of the RLA, 45 U.S.C. §152 First.

## PARTIES

1. BMWED is an unincorporated labor association that maintains its headquarters in Novi, Michigan. BMWED is the duly designated representative for collective bargaining under Section 1 Sixth of the RLA, 45 U.S.C. §151 Sixth, of employees of UP working in the class or

craft of maintenance of way employee, including UP maintenance of way employees who live and work in this District. On January 1, 2005, the BMWED became an autonomous division of the International Brotherhood of Teamsters. Prior to that date, BMWED was an international union founded in 1887 that went by the name Brotherhood of Maintenance of Way Employes.

2. UP is a rail carrier as that term is defined in Section 1 First of the RLA. UP conducts rail operations in many states in the midwest, south and west, including in Nebraska.

## JURISDICTION AND VENUE

3. This Court has jurisdiction of this petition pursuant to 28 U.S.C. §§ 1331 and 1337, §§ 2201 and 2202; and 45 U.S.C. § 153 First (p).

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391 (b) and (c), and 45 U.S.C. §153 First(p) because UP owns and operates lines of railroad within this District and is headquartered in this District.

## STATEMENT OF THE CLAIM

5. Between September of 2019 and January of 2020, UP abolished positions of "semi-truck drivers", eliminating the positions of 11 employees who performed the work of transporting maintenance of way materials and equipment between various locations on the Carrier's system; and UP then divested itself of the trucks the semi-truck drivers had used to perform their work.

6. Also, beginning in September of 2019, UP began to use outside contractors to transport maintenance of way equipment and materials around its system; and it has continued to use contractors to perform that work which was previously performed by BMWED-represented semi-truck drivers.

7. On November 5, 2019 and February 18, 2020, BMWED filed claims (grievances) on behalf of its members whose positions as semi-truck drivers were abolished and whose work as semi-truck drivers was contracted-out. Among other things, the claims asserted that UP had violated the applicable BMWED-UP collective bargaining agreement ("CBA") by assigning the work of transporting maintenance of way materials and equipment throughout the UP system, previously performed by the claimants, to contractor forces.

8. The claim in one case sought a remedy that the claimants "be allowed an equal proportionate share of all hours performed by outside forces performing the claimed duties beginning September 11, 2019 and continuing while the Carrier leaves the four semi-truck positions abolished". The claim in the other case sought a remedy that the claimants "be allowed an equal proportionate share of all hours performed by outside forces performing the claimed duties beginning January 15, 2020 and continuing while the Carrier leaves the eleven semi-truck positions abolished".

9. BMWED and UP conferenced the claims pursuant to the CBA, but were unable to resolve their differences.

10. After handling of the claims under the CBA was completed, the claims were referred to Public Law Board No. 7661 ("PLB"), which was established under Section 3 Second of the Railway Labor Act ("RLA"), 45 U.S.C. §153 Second, to resolve claims and grievances that cannot be resolved by BMWED and UP. Funding for the PLB is provided by the National Mediation Board ("NMB") pursuant to RLA Section 3. The Arbitrator and Neutral member of the Board was Arbitrator Kathryn A. VanDagens.

11. On February 15, 2024, the PLB issued its Awards Nos 41 and 43 in which it sustained

the claims. The Awards each stated: "Claim sustained.".

12. The Awards further stated that the Carrier is "ordered to make the Award effective on or before 30 days following the date of the Award". In its decisions, the PLB also stated that "The Claimants are entitled to a monetary remedy equal to a proportional share of the hours actually worked by the outside contractors". The Board directed that there be "a joint check of the Carrier's records to determine the number of hours worked by the contractors".

13. In approximately nine months following issuance of the Awards, there was no joint check of the records, and no payments to the claimants.

14. BMWED made repeated requests for a joint check, but UP refused. Instead, the Carrier sent information that UP unilaterally determined to be relevant for calculation of the remedies. All of the information provided by UP was incomplete. In particular, UP provided data that included destination points for each trip by contractors, but not origination points; then UP produced information limited to only certain parts of the UP system, even though the employees whose positions were abolished had been assigned to pickup and deliver materials and equipment all over the UP system, and to report to locations across the UP system.

15. On November 27, 2024, UP informed BMWED that it had made payments to the claimants in amounts purportedly in compliance with the Awards, calculated solely by UP based on the geographically limited data previously offered by UP.

16. BMWED responded to UP that the Union did not agree to UP's unilateral limitation on the geographic areas for which data was provided, that UP had not complied with the Awards because it had not engaged in a joint check of records, and that the Union did not accept the calculation of the monetary remedies provided by UP based on its unilaterally established

limitations on the portions of its system which was the data that was the basis for UP's calculation of the monetary remedies was derived.

17. Additionally, because the claims that were sustained were continuing claims for so long as the semi-truck driver positions remain abolished, and the positions remain abolished with UP continuing s to contract-out the work which was found by the Awards to be in violation of the CBA, UP's unilateral payments of what it believes to be full compliance with the remedy portions of the Awards did not constitute compliance with the Awards.

18. BMWED filed a petition for enforcement of the Awards with this Court on December 16, 2024. *Brotherhood of Maintenance of Way Employees Division/IBT v. Union Pacific Railroad Co.*, (D.NE Case No. 8:24CV478).

19. UP moved for dismissal of BMWED's petition asserting that the Union's petition would require the Court to interpret rather than enforce the Awards. UP advised the Court that the Carrier had filed a request for interpretation of the Awards to the NMB, and UP submitted to the Court an undated letter as evidence of that request. Exhibit F to Doc. #13-6 in 8:24CV478.

20. On June 4, 2025, the Court dismissed the Union's petition, after concluding that the dispute involved "interpretative issues better addressed by the [arbitration] board".

21. On June 9, 2025, the NMB advised BMWED that the NMB had not as of that date received a request from UP for interpretation of the Awards.

22. On June 17, 2025, BMWED wrote to the NMB requesting arbitration of the disputed interpretation issues and their assignment to PLB No. 7661.

23. The interpretation cases have been assigned to PLB No. 7661. But as of the date of this petition, they await NMB funding and are numbers 28 and 29 on the wait list for funding.

24. Because the time for actions for enforcement of awards under RLA Section 3 is two years from issuance of an award (45 U.S.C. §153 First (r), and Awards Nos. 41 and 43 of PLB No. 7661 were issued on February 15, 2024, BMWED proposed to UP that the parties enter a tolling agreement while they wait for interpretative awards from PLB No. 7661. UP refused to enter a tolling agreement.

## FIRST CAUSE OF ACTION

25. BMWED repeats and realleges herein the allegations contained in paragraphs 1-24 above which are incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

26. Section 3 First (p) of the RLA, 45 U.S.C. § 153 First (p) provides that "[i]f a carrier does not comply with an order of" an arbitration panel under Section 3, a union may seek enforcement of the award in Federal District Court.

27. UP has failed and refused to comply with the Awards because it refused to engage in a joint check of records with BMWED as required by the Awards; because the Carrier unilaterally determined the monetary remedies to be provided to the claimants, contrary to the orders of the PLB; because the payments made by UP to the claimants are insufficient and not in compliance with the Awards; and because the Carrier has ignored remedies for its continued violation of the CBA since the semi-truck driver positions remain abolished and UP is still contracting-out that work, and has not made or agreed to make payments in accordance with the Awards for so long as the semi-truck driver positions remain abolished.

28. UP's refusal to enter a tolling agreement while PLB No. 7661 is considering the interpretation issues, after UP asserted that the parties' dispute requires arbitral interpretation, demonstrates that UP does not genuinely desire arbitral interpretation of the Awards but only

sought apply its interpretation of the Awards and to thwart judicial enforcement of the Awards.

29. Because UP has failed to comply with the Awards, BMWED is entitled to an order enforcing the Awards, directing compliance with the Awards in accordance with Section 3 First (p) of the RLA, 45 U.S.C. § 153 First (p), and requiring UP to pay the Union's attorneys fees in accordance with Section 3 First(p).

## SECOND CAUSE OF ACTION

30. BMWED repeats and realleges herein the allegations contained in paragraphs 1-29 above which are incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

31. Section 2 First of the RLA (45 U.S.C. § 152 First) provides:

> It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

32. Section 2 First is "more than a mere statement of policy or exhortation to the parties; it was designed to be a legal obligation, enforceable by whatever appropriate means might be developed on a case-by-case basis." *Chi. & N.W. Ry. v. Transportation Union*, 402 U.S. 570, 577 (1971). "Congress intended the enforcement of §2 First to be overseen by appropriate judicial means." *Id.* at 581.

33. Under Section 2 First, UP is obligated to exert every reasonable effort to and to settle all disputes with BMWED, whether arising out of the application of such agreements or otherwise, and to deal with the Union in good faith.

34. UP's refusal to enter a tolling agreement while PLB No. 7661 is considering the interpretation issues, after UP asserted that the parties' dispute requires arbitral interpretation, constitutes a failure to exert every reasonable effort to resolve its disputes with BMWED about Awards Nos. 41 and 43 in violation of RLA Section 2 First.

### REQUEST FOR RELIEF

WHEREFORE, BMWED respectfully requests that the Court:

A. Declare that UP did not comply with the Awards because it refused to engage in a joint check of records with BMWED as required by the Awards, because the Carrier unilaterally determined the monetary remedies to be provided to the claimants contrary to the orders of the PLB, because the payments made by UP to the claimants are insufficient and not in compliance with the Awards; and because the Carrier has not made or agreed to make payments in accordance with the Awards for so long as the semi-truck driver positions remain abolished;

B. Declare that BMWED is entitled to enforcement of the Awards in accordance with Section 3 First (p) of the Railway Labor Act, 45 U.S.C. § 153 First (p);

C. Enforce the Awards and direct UP to comply with the Awards;

D. Declare that UP's refusal to enter a tolling agreement while PLB No. 7661 is considering the interpretation issues, after UP asserted that the parties' dispute requires arbitral interpretation, constitutes a failure by UP to exert every reasonable effort to resolve its disputes about Awards Nos. 41 and 43 with BMWED in violation of RLA Section 2 First, 45 U.S.C. § 152 First.

E. Grant BMWED such other and further legal and equitable relief that the Court deems just and proper; and

F. Grant BMWED its attorneys fees and costs of this action as provided for in 45 U.S.C. §153 First (p).

Respectfully submitted,

*/s/John Corrigan*
John Corrigan
NE Bar No. 21242
Attorney for Plaintiff
Dowd & Corrigan, LLC
6700 Mercy Road
Suite 501
Omaha, NE 68106
(402) 341-1020
Fax (402) 341-0254
jcorrigan@dowd-law.com


*/s/ Richard S. Edelman*
Richard S. Edelman
Aaron S. Edelman
Attorneys for Plaintiff
Mooney, Green, Saindon, Murphy & Welch, P.C.
1620 Eye Street NW, Suite 700
Washington, DC  20006
(202) 783-0010
Fax (202) 783-6088
Redelman@MooneyGreen.com
Aedelman@mooneygreen.com

February 9, 2026