PUBLIC LAW BOARD NO. 7661

CASE NO. 43
AWARD NO. 43

Brotherhood of Maintenance of Way Employes
Division - IBT Rail Conference

and

Union Pacific Railroad Company

Claimants: B. Stroup, T. Wilkerson, J. Lundry and J. Kleist

STATEMENT OF CLAIM:

"Claim of the System Committee of the Brotherhood that:

1. The Agreement was violated when the Carrier had the duties that the Claimants had carried out daily in the form of transporting Maintenance of Way materials and Maintenance of Way equipment, utilizing their assigned semi-trucks between various locations throughout the Union Pacific (UP) Railroad System, given to subcontractors beginning September 11, 2019 and continuing (System File A-1952U-007/1730145 UPS).

2. The Agreement was further violated when the Carrier failed to notify the General Chairman, in writing, as far in advance of the date of the contracting transaction as is practicable and in any event not less than fifteen (15) days prior thereto regarding the work referred to above and when it failed to assert good-faith efforts to reduce the incidence of subcontracting and increase the use of its Maintenance of Way forces as required by Rule 52 and the December 11, 1981 National Letter of Agreement.

3. As a consequence of the violations referred to in Parts 1 and/or 2 above, Claimants B. Stroup, T. Wilkerson, J. Lundry and J. Kleist shall now each '… be allowed an equal and proportionate share of all hours performed by outside forces performing the claimed duties beginning September 11, 2019 and continuing while the Carrier leaves the four semi-truck positions abolished. ***' (Employes' Exhibit 'A-1')."

FINDINGS:

The Carrier or Carriers and the Employee or Employees involved in this dispute are respectively carrier or employee within the meaning of the Railway Labor Act as approved June 21, 1934. Public Law Board 7661 has jurisdiction over the parties and the dispute involved herein.

PLB No. 7661
Award No. 43

The Claimants have established and maintain seniority in the Carrier's Maintenance of Way and Structures Department. The Claimants all held system semi-truck driver positions and transported Maintenance of Way ("MOW") materials and equipment between various locations throughout the Carrier's System.

The Carrier asserted that it provided Notice of its Intent to contract work in a letter dated November 13, 2018:

THIS IS TO ADVISE OF THE CARRIER'S INTENT TO CONTRACT THE FOLLOWING WORK:

**PLACE:** At various locations on the Heartland Service Unit
**SPECIFIC WORK:** Providing fully operated, fueled and maintained track hoes/excavators with buckets and thumb, backhoe(s), grapple/boom truck(s), dump truck(s), semi/flatbed(s), loaders, and dozers necessary to assist with routine and emergency right of way cleanup; loading, unloading and hauling track panels, ties, scrap, fill material, ballast and asphalt; commencing January 1, 2019 thru December 31, 2019.

The reason this work is to be performed by an outside contractor is the past practice provision, paragraph (b) of Rule 52 of the July 1, 2001 UP Agreement, which states that "nothing contained in this rule will affect the prior and existing rights and practices of either party in connection with the contracting out", and/or the contracting exceptions provision identified within paragraph (a) Rule 52 or the November 1, 2001 C&NW Agreement (Rule 1 b) such as not adequately equipped. Further clarification of the work and the reason for contracting out the same will be discussed during conference.

On September 9, 2019, the Carrier abolished one system semi-truck driver position; on September 10, 2019, the Carrier abolished three system semi-truck driver positions, a total of four Group 26 system semi-truck driver positions. In addition, the Carrier sold semi-trucks.

On September 11, 2019, and continuing, the Carrier assigned various outside contractors to transport MOW equipment and materials from one location to another. Sub-contractor RJ Corman operated former Carrier Truck Nos. 43245 and 58510 to perform this work.

In a letter dated November 5, 2019, the Organization filed a claim on behalf of the Claimants. The Carrier denied the claim in a letter dated December 30, 2019. Following discussion of this dispute in conference, the positions of the parties remained unchanged, and this dispute is now properly before the Board for adjudication.

The Organization contends that this claim is not duplicative of any other claims filed to this same Public Law Board, as the second claim addresses the elimination of additional semitrucks in January 2020, and was filed due to the Carrier's additional violations of the Agreement and is claiming different work. The Organization contends that even if the claims were duplicative, one

PLB No. 7661
Award No. 43

should be decided on its merits and the duplicative claim alone should be dismissed. The record is totally void of any evidence to support the Carrier's position.

The Organization contends that the work of transporting MOW equipment and materials throughout the territories is Scope-covered work and has historically and customarily been assigned to and performed by existing Track Subdepartment semitruck operators.

The Organization contends that the Carrier did not notify the Organization of its plans to contract out the claimed work. Although the Carrier asserted that it notified the Organization of its intentions in a letter dated November 13, 2018, the Organization presented evidence that no such letter was ever received by the Organization. The Carrier never refuted this evidence, despite the burden of proof falling on the party asserting the notice was sent and received.

The Organization contends that even if said letter had been sent, it failed to notify the Organization that it intended to use contractors for this work. The Organization contends that previous awards have confirmed that blanket notices are insufficient. Award 14 of PLB 7099 and NRAB Third Division Awards 41052 and 41054. The Organization contends that the purported notice did not reference any specific location or any of the specific contracting transactions that commenced on September 11, 2019.

The Organization contends that the Carrier must show that one of the enumerated exceptions contained in Rule 52 was applicable. The Carrier claimed that it was not adequately equipped to perform this work but failed to provide any evidence in support of this exception. The Organization contends that equipment and forces were readily available to the Carrier. In fact, the Carrier had recently abolished the Claimants' positions and sold their equipment to outside forces. The Organization contends that the contract employes from RJ Corman utilized Carrier Truck Nos. 58510, 65100 and 43245 that had previously been assigned to Group 26 MOW employes.

The Organization and the Carrier had entered into a Letter of Understanding ("LOU"), signed July 25, 2012, in which, "[I]t was agreed the Carrier will not use other than BMWED employees to operate their assigned vehicles when they are changing assembly points pursuant to Rule 30. In return, the BMWED recognizes the Carrier's practice of using contractors to supplement the Carrier's workforce to move equipment through the use of lowboys, semitrucks and other similar mechanisms to move equipment by other than the direct operation of a vehicle pursuant to Rule 52(b)." The Organization contends that in this instance, the Carrier was not supplementing, but supplanting, its workforce with subcontractors.

The Organization contends that the Carrier failed to provide any evidence whatsoever that it was not adequately equipped. Additionally, the Carrier's failure to be adequately equipped, if any, cannot be the result of the Carrier's own actions. The Organization contends that the Carrier's supervisor acknowledged its own responsibility when asking how to explain that it was not adequately equipped, to wit, "Typically I would say UP was not adequately equipped in this situation; however, the reason for not adequately equipped cannot be one UP created - difficult to answer in this case."

PLB No. 7661
Award No. 43

The Organization contends that the Claimants were available and qualified to perform the claimed work, had the Carrier not abolished their positions and auctioned off their trucks to be used by subcontractors.

The Carrier contends that the Organization improperly amended its claim after filing it, to further develop its claim. The Carrier contends that once it refuted the Organization's initial claim, the Organization then argued that the Carrier had improperly abolished and reposted positions as headquartered at specific locations. The Carrier contends that it was deprived of the opportunity to fully defend its position.

The Carrier contends that this claim is duplicative of the claim made in Carrier File # 1735480, as they both claim the same work. The Carrier contends that where two claims address the same fact pattern, they should both be dismissed.

The Carrier contends that the Organization failed to meet its burden of proving that the Agreement was violated. The Carrier contends that the Scope Rule cited in this claim is general in nature and does not list any work as being reserved to the Organization's employes. The Carrier contends that it has a well-established "mixed practice" of contracting out the claimed work. The Carrier recognizes that the Organization's members have performed this work in the past but asserts that the Organization was unable to show that the claimed work is exclusive, system-wide work reserved solely for the Organization.

The Carrier contends that Rule 52(b) of the parties' Agreement provides that "work customarily performed by employees covered under this Agreement may be let to contractors and be performed by contractor's forces." The Carrier contends that it has a well-established past practice of contracting out this work, which the Organization never refuted. *See, e.g.*, Third Division Award 42156.

The Carrier contends that its November 13, 2018, Notice provided timely notice of its intention to contract out this work and met one of the exceptions under the Agreement. The Carrier contends that it informed the Organization that it was not adequately equipped to perform right of way cleanup; loading, unloading and hauling track panels, ties, scrap, fill material, ballast and asphalt in a timely manner. The Carrier contends that the Notice informed the Organization of the Carrier's intent to use contractors and their operated, fueled, and maintained track hoes/excavators with buckets and thumb, backhoe(s), grapple/boom truck(s), dump truck(s), semi/flatbed(s), loaders, and dozers. The Carrier contends that the parties timely conferenced the Notice.

The Carrier contends that it demonstrated that it did not have the equipment needed to perform the work. Considering the time requirements for the project, the Carrier was not adequately equipped to handle the work; it was necessary for the Carrier to request the assistance of outside forces. The Carrier denies that it intentionally understaffed its forces. The Carrier contends that it did not have the equipment needed at its disposal.

The Carrier contends that the Claimants have not suffered any loss of work opportunity or wages as claimed. In addition, while the claim seeks overtime, there was no overtime worked. It

PLB No. 7661
Award No. 43

is well established that for the Claimants to receive monetary payment, the Organization must demonstrate that they suffered a monetary loss.

The Board has reviewed the procedural arguments raised by the Carrier, and we find them to be without merit. The initial claim asserted that the Organization's work was improperly assigned to outside contractors and has not changed. The assertion that the Claimants' positions were improperly abolished was in response to the defense asserted by the Carrier. It was a specification of the same claim. This Board has held that the progression of claims covering the same subject is inconsistent with the Railway Labor Act and must be dismissed. Here, however, the Carrier has not shown that the claim filed by the Organization was in any manner duplicative or that the issues raised therein were previously resolved in arbitration.

The Organization has shown that this work, transporting MOW materials and equipment, is Scope-covered work. The Carrier acknowledges that its forces have performed this work in the past, arguing that there was a "mixed practice" on the property of assigning this work to the MOW and to contractors. However, as against contractors, the BMWED is not obligated to show that its members performed this work to the exclusion of all others. Furthermore, numerous on-property Awards have found that the transporting of MOW materials and equipment is Scope-covered work. *See, e.g.*, Award 14 of Public Law Board 7099; Third Division Awards 41052 and 41054.

This was confirmed by the parties' July 25, 2012, Letter of Understanding, where the parties agreed:

> This letter confirms our discussions concerning Rule 52 and the Carrier's use of contractors to relocate BMWED assigned equipment and trucks when changing assembly points. Currently, the Carrier uses contractors' lowboys, semi trucks and other types of equipment to load and haul the vehicles and equipment your members operate. At time[s] they also have contractors drive vehicles and trucks between work locations.
>
> The BMWED has filed claims over these issues and in order to resolve them it was agreed the Carrier will not use other than BMWED employees to operate their assigned vehicles when they are changing assembly points pursuant to Rule 30. In return, the BMWED recognizes the Carrier's practice of using contractors to supplement the Carrier's workforce to move equipment through the use of lowboys, semi trucks and other similar mechanisms to move equipment by other than the direct operation of a vehicle pursuant to Rule 52(b).

The next issue is whether the Carrier's November 13, 2018, Notice to the Organization satisfied its obligation under Rule 52(a) to provide advance notice of contracting out to the Organization. The Organization denied during the parties' on-property correspondence that it had received this notice and the Carrier provided no evidence to refute this assertion. Since the obligation is on the Carrier to prove that Notice was provided, a sustaining Award is in order.

But even if the Carrier had proven that it sent the proffered Notice, it does not address the work claimed here. The Notice refers to contracting for "fully operated, fueled and maintained

PLB No. 7661
Award No. 43

track hoes/excavators with buckets and thumb, backhoe(s), grapple/boom trucks, dump truck(s), semi/flatbed(s), loaders, and dozers necessary to assist with routine and emergency right of way cleanup; loading; unloading and hauling track panels, ties, scrap, fill material, ballast and asphalt commencing January 1, 2019 through December 31, 2019 across the Carrier's "Heartland Service Unit." This Notice does not refer to the hauling of material and equipment from one Carrier location to another using system semi-trucks. Rule 52(a) requires the Carrier to provide Notice sufficient to have a meaningful discussion regarding the Carrier's intention to contract out the BMWED's work. This Notice was insufficient to discuss the claimed work.

With respect to the other issues raised by the parties, we find that they were raised and fully discussed in Award 41 of this Public Law Board, and the Board incorporates the holdings there by reference.

In sum, the Organization has proved its case. The Claimants are entitled to a monetary remedy equal to a proportional share of the hours actually worked by the outside contractors. The case shall be remanded for a joint check of the Carrier's records to determine the number of hours worked by the contractors.

AWARD:

Claim sustained. The Carrier is ordered to make the Award effective on or before 30 days following the date of the Award.

_____
Kathryn A. VanDagens
Neutral Referee

_____  
Chris Bogenreif  
Carrier Member

_____  
John Schlismann  
Employe Member

Dated: 02/15/2024