PUBLIC LAW BOARD NO. 7661

CASE NO. 41
AWARD NO. 41

Brotherhood of Maintenance of Way Employes
Division - IBT Rail Conference

and

Union Pacific Railroad Company

Claimants: C. Comer, J. Crane, G. Hoyle, Jr., J. Kleist, G. Gulley, C. Westeng, T. Wilkerson, J. Lundry, B. Stroup, J. Grever, and M. Coffin

STATEMENT OF CLAIM:

"Claim of the System Committee of the Brotherhood that:

1. The Agreement was violated when the Carrier had the duties that the Claimants had carried out daily in the form of transporting Maintenance of Way materials and Maintenance of Way equipment, utilizing their assigned semitrucks between various locations throughout the UPRR System, given to subcontractors beginning January 15, 2020 and continuing (System File A-2052U-002/1735480 UPS).

2. The Agreement was further violated when the Carrier failed to notify the General Chairman, in writing, as far in advance of the date of the contracting transaction as is practicable and in any event not less than fifteen (15) days prior thereto regarding the work referred to above and when it failed to assert good-faith efforts to reduce the incidence of subcontracting and increase the use of its Maintenance of Way forces as required by Rule 52 and the December 11, 1981 National Letter of Agreement.

3. As a consequence of the violations referred to in Parts 1 and/or 2 above, Claimants C. Comer, J. Crane, G. Hoyle, Jr., J. Kleist, G. Gulley, C. Westeng, T. Wilkerson, J. Lundry, B. Stroup, J. Grever and M. Coffin shall now each '… be allowed an equal and proportionate share of all hours performed by outside forces performing the claimed duties beginning January 15, 2020 and continuing while the Carrier leaves the eleven semi-truck positions abolished. ***' (Employes' Exhibit 'A-1')."

FINDINGS:

The Carrier or Carriers and the Employee or Employees involved in this dispute are respectively carrier or employee within the meaning of the Railway Labor Act as approved June 21, 1934. Public Law Board 7661 has jurisdiction over the parties and the dispute involved herein.

PLB No. 7661
Award No. 41

The Claimants have established and maintain seniority in the Carrier's Maintenance of Way and Structures Department. The Claimants all held system semitruck driver positions and transported Maintenance of Way ("MOW") materials and equipment between various locations throughout the Carrier's System.

On September 9, 2019, the Carrier abolished one system semitruck driver position; on September 10, 2019, the Carrier abolished three system semitruck driver positions; on January 17, 2020, the Carrier abolished five system semitruck driver positions; and on January 14, 2020, the Carrier abolished two system semitruck driver positions, a total of eleven system semitruck driver positions. In addition, the Carrier sold Truck Nos. 46077, 42181, 42175, 59743, 48735, 44136, 43043, 49004, 46079, and 44180.

On December 13, 2019, the Carrier provided Notice to the Organization of its intention to contract certain work:

> **PLACE:** At various locations on the Heartland Service Unit
> **SPECIFIC WORK:** Providing fully fueled, operated maintained equipment including but not limited to semi trucks, trailers and dump trucks to assist with hauling or moving equipment and materials commencing January 1, 2020 thru December 31, 2020.
>
> The reason this work is to be performed by an outside contractor is the past practice provision, paragraph (b) of Rule 52 of the July 1, 2001 UP Agreement, which states that "nothing contained in this rule will affect the prior and existing rights and practices of either party in connection with the contracting out", and/or the contracting exceptions provision identified within paragraph (a) Rule 52 or paragraph (c) of Rule 59 of the October 1, 1973 Agreement regarding existing rights. Further clarification of the work and the reason for contracting out the same will be discussed during conference.

The parties conferenced but were unable to reach agreement.

On January 15, 2020, and continuing, the Carrier assigned various outside contractors to transport MOW equipment and materials from one location to another.

In a letter dated February 18, 2020, the Organization filed a claim on behalf of the Claimants. The Carrier denied the claim in a letter dated April 27, 2020. Following discussion of this dispute in conference, the positions of the parties remained unchanged, and this dispute is now properly before the Board for adjudication.

The Organization contends that this claim is not duplicative of any other claims filed to this same Public Law Board, as the second claim addresses the elimination of additional semitrucks in September 2019, and was filed due to the Carrier's additional violations of the Agreement and is claiming different work. The Organization contends that even if the claims were duplicative, this one should be decided on its merits and the duplicative claim alone should be dismissed. In

Page 2 of 7

addition, the Organization contends, the Carrier failed to raise this issue for two years during the on-property handling, and thus waived any such claim.

The Organization contends that the work of transporting MOW equipment and materials throughout the territories is Scope-covered work and has historically and customarily been assigned to and performed by existing Track Subdepartment semitruck operators.

The Organization contends that the Carrier did not notify the Organization of its plans to contract out the claimed work. The Organization contends that previous awards have confirmed that blanket notices are insufficient. Award 14 of PLB 7099 and NRAB Third Division Awards 41052 and 41054. The Organization contends that the purported notice did not reference any specific location or any of the specific contracting transactions that commenced on January 15, 2020, and continuing.

The Organization contends that the Carrier must show that one of the enumerated exceptions contained in Rule 52 was applicable. The Carrier claimed that it was not adequately equipped to perform this work but failed to provide any evidence in support of this exception. The Organization contends that equipment and forces were readily available to the Carrier. In fact, the Carrier had recently abolished the Claimants' positions and sold their equipment to the outside forces. The Organization contends that the contract employes from RJ Corman utilized Carrier Truck Nos. 58510, 65100 and 43245, which had been previously operated by and assigned to Group 15 and Group 26 MOW employes.

The Organization and the Carrier had entered into a Letter of Understanding ("LOU"), signed July 25, 2012, in which, "[I]t was agreed the Carrier will not use other than BMWED employees to operate their assigned vehicles when they are changing assembly points pursuant to Rule 30. In return, the BMWED recognizes the Carrier's practice of using contractors to supplement the Carrier's workforce to move equipment through the use of lowboys, semitrucks and other similar mechanisms to move equipment by other than the direct operation of a vehicle pursuant to Rule 52(b)." The Organization contends that in this instance, the Carrier was not supplementing, but supplanting, its workforce with subcontractors.

The Organization contends that the Carrier's failure to be adequately equipped, if any, cannot be the result of the Carrier's own actions. The Organization contends that the Carrier's supervisor acknowledged its own responsibility when asking how to explain that it was not adequately equipped, to wit, "Typically I would say UP was not adequately equipped in this situation; however, the reason for not adequately equipped cannot be one UP created - difficult to answer in this case."

The Organization contends that the Claimants were available and qualified to perform the claimed work, had the Carrier not abolished their positions and auctioned off their trucks to be used by subcontractors.

The Carrier contends that the Organization improperly amended its claim after filing it, to further develop its claim. The Carrier contends that once it refuted the Organization's initial claim, the Organization then argued that the Carrier had improperly abolished and reposted positions as

PLB No. 7661
Award No. 41

headquartered at specific locations. The Carrier contends that it was deprived of the opportunity to fully defend its position.

The Carrier contends that this claim is duplicative of the claim made in Carrier File # 1730145, as they both claim the same work. The Carrier contends that where two claims address the same fact pattern, they should both be dismissed.

The Carrier contends that the Organization failed to meet its burden of proving that the Agreement was violated. The Carrier contends that the Scope Rule cited in this claim is general in nature and does not list any work as being reserved to the Organization's employes. The Carrier contends that it has a well-established "mixed practice" of contracting out the claimed work. The Carrier recognizes that the Organization's members have performed this work in the past but asserts that the Organization was unable to show that the claimed work is exclusive, system-wide work reserved solely for the Organization.

The Carrier contends that Rule 52(b) of the parties' Agreement provides that "work customarily performed by employees covered under this Agreement may be let to contractors and be performed by contractor's forces." The Carrier contends that it has a well-established past practice of contracting out this work, which the Organization never refuted. *See, e.g.,* Third Division Award 42156.

The Carrier contends that it provided timely notice of its intention to contract out this work and met one of the exceptions under the Agreement. The Carrier contends that it informed the Organization that it was not adequately equipped to load, transport, and unload materials and equipment in a timely manner. The Carrier contends that the Notice informed the Organization of the Carrier's intent to use contractors and their operated, fueled, and maintained semi-trucks, trailers, or dump truck(s). The Carrier contends that the parties timely conferenced the Notice.

The Carrier contends that it demonstrated that it did not have the equipment needed to perform the work. Considering the time requirements for the project, the Carrier was not adequately equipped to handle the work; it was necessary for the Carrier to request the assistance of outside forces. The Carrier denies that it intentionally understaffed its forces. The Carrier contends that it did not have the equipment needed at its disposal.

The Carrier contends that the Claimants have not suffered any loss of work opportunity or wages as claimed. In addition, while the claim seeks overtime, there was no overtime worked. It is well established that for the Claimants to receive monetary payment, the Organization must demonstrate that they suffered a monetary loss.

The Board has reviewed the procedural arguments raised by the Carrier, and we find them to be without merit. The initial claim asserted that the Organization's work was improperly assigned to outside contractors and has not changed. The assertion that the Claimants' positions were improperly abolished was in response to the defense asserted by the Carrier. It was a specification of the same claim. This Board has held that the progression of claims covering the same subject is inconsistent with the Railway Labor Act and must be dismissed. Here, however,

the Carrier has not shown that the claim filed by the Organization was in any manner duplicative or that the issues raised therein were previously resolved in arbitration.

The Organization has shown that this work, transporting MOW materials and equipment, is Scope-covered work. The Carrier acknowledges that its forces have performed this work in the past, arguing that there was a "mixed practice" on the property of assigning this work to the MOW and to contractors. However, as against contractors, the BMWED is not obligated to show that its members performed this work to the exclusion of all others. Furthermore, numerous on-property Awards have found that the transporting of MOW materials and equipment is Scope-covered work. *See, e.g.,* Award 14 of Public Law Board 7099; Third Division Awards 41052 and 41054.

This was confirmed by the parties' July 25, 2012, Letter of Understanding, where the parties agreed:

> This letter confirms our discussions concerning Rule 52 and the Carrier's use of contractors to relocate BMWED assigned equipment and trucks when changing assembly points. Currently, the Carrier uses contractors' lowboys, semi trucks and other types of equipment to load and haul the vehicles and equipment your members operate. At time[s] they also have contractors drive vehicles and trucks between work locations.
>
> The BMWED has filed claims over these issues and in order to resolve them it was agreed the Carrier will not use other than BMWED employees to operate their assigned vehicles when they are changing assembly points pursuant to Rule 30. In return, the BMWED recognizes the Carrier's practice of using contractors to supplement the Carrier's workforce to move equipment through the use of lowboys, semi trucks and other similar mechanisms to move equipment by other than the direct operation of a vehicle pursuant to Rule 52(b).

The next issue is whether the Carrier's December 13, 2019, Notice to the Organization satisfied its obligation under Rule 52(a) to provide advance notice of contracting out to the Organization. In Third Division Award 42076, an on-property award, this Board wrote,

> Notices that have similar or greater breadth and scope, with less particularity, have been found to be sufficient by the Board on this property. See e.g., Third Division Awards 40863, 40857, 40756 and 37365. The Organization's reliance on cases concerning other properties or other Agreements does not alter this precedent. See e.g., Third Division Awards 41105, 41102, 40997, 26762, 25677 and 24242. We find that the notice gave the Organization sufficient information to take a position as to why the specified contracting should not take place.

Thus, we hold that the notice provided here, while a "blanket" notice of contracting out, is similar to other notices found to satisfy the Carrier's obligations under Rule 52.

Under Rule 52(a), the Carrier is only permitted to contract out work customarily performed by the BMWED if one of the four listed exceptions applies. The Carrier has asserted that it was

PLB No. 7661<br>
Award No. 41

not adequately equipped to handle the work without the use of outside forces. Rule 52(b) permits the Carrier to contract out in conformance with its prior rights and practices. In this case, the Carrier relies upon both grounds.

There is no dispute that between September 9, 2019, and January 14, 2020, the Carrier abolished eleven semitruck driver positions which were responsible for transporting MOW materials and equipment between various locations on the Carrier's system and then divested itself of its associated vehicles. Beginning January 15, 2020, the Carrier used outside forces to do the work previously performed by BMWED members.

If the Carrier was not adequately equipped to do this work without the use of outside forces, it was due to its own actions. While the Carrier has the managerial right to abolish positions as necessary, it may not use its own unilateral action as an excuse for not being adequately equipped. Even the Carrier's manager recognized this principle in his statement. Numerous Boards have recognized that the Carrier's obligations include to rent, lease, or purchase equipment for its forces to complete the work. Here, the Carrier abolished positions and sold equipment it owned and then claimed it was not adequately equipped. The Board finds that the Carrier has not demonstrated that the exception to Rule 52(a) was applicable under the circumstances.

The Carrier's second defense was that it had the right under Rule 52(b) and the July 25, 2012, LOU to use outside forces in accord with its prior practices. Under the LOU, the Carrier has the right to supplement its forces. However, as the Organization points out, here the contractors did not supplement the Carrier's workforce, but supplanted it. The BMWED's members were replaced by the contractors. Thus, the Carrier's use of outside forces beginning on January 15, 2020, did not comply with the parties' LOU.

In sum, the Organization has proved its case. The Claimants are entitled to a monetary remedy equal to a proportional share of the hours actually worked by the outside contractors. The case shall be remanded for a joint check of the Carrier's records to determine the number of hours worked by the contractors.

AWARD

Claim sustained. The Carrier is ordered to make the Award effective on or before 30 days following the date of the Award.

_____
Kathryn A. VanDagens
Neutral Referee

Chris Bogenreif
Carrier Member

John Schlismann
Employe Member

PLB No. 7661
Award No. 41

Dated: 02/15/2024